UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
VERONICA GONZALEZ and ANGELA           :
GONZALEZ,                              :
                                       :
                Plaintiffs,           :         **REPORT AND RECOMMENDATION**
                                       :         12-CV-06304 (MKB) (VMS)
             -against-                :
                                       :
GAN ISRAEL PRESCHOOL, RABBI MOSHE      :
KATZMAN, and COMMUNICATIONS            :
CAPITAL GROUP 1, LLC,                  :
                                       :
              Defendants.          :
-------------------------------------------------------- x

**Scanlon, Vera M., United States Magistrate Judge:**

On December 21, 2012, Plaintiffs Veronica Gonzalez ("Plaintiff Veronica Gonzalez")

and Angela Gonzalez ("Plaintiff Angela Gonzalez")[1] filed this action against Defendants Gans

Israel Preschool ("Defendant Gans Israel"), Rabbi Moshe Katzman ("Defendant Katzman")[2] and

Communications Capital Group 1, LLC ("Defendant CCG"),[3] alleging violations of the Fair

Labor Standards Act ("FLSA"); the New York Labor Law ("NYLL"), Article 19 §§ 633 and 650

---

[1] Hereinafter Plaintiff Veronica Gonzalez and Plaintiff Angela Gonzalez will be collectively referred to as "Plaintiffs."

[2] Hereinafter Defendant Gans Israel and Defendant Katzman will be collectively referred to as "Defendants."

[3] Plaintiffs' complaint states that Defendant CCG is a New York State corporation engaged in the education business, but says nothing more about Defendant CCG's connection to this litigation. Docket No. 1 ¶ 10. During the January 10, 2014 evidentiary hearing, Plaintiff Angela Gonzalez testified that she does not know anything about Defendant CCG, and Plaintiff Veronica Gonzalez offered no testimony on the subject. Docket No. 22 at 57:10-18 (hereinafter "Jan. 10 Tr. [page number]:[line numbers]"). Plaintiffs' counsel herself could not tell the Court anything about Defendant CCG's involvement. Jan. 10 Tr. 66:12-16. Given the absence of any information in Plaintiffs' complaint or record linking Defendant CCG to the instant dispute, I respectfully recommend that the District Judge **deny** Plaintiffs' default judgment motion as to Defendant CCG.

et seq.; and 12 New York Codes, Rules and Regulations ("NYCRR") § 146-1.6.[4]  Docket No. 1.

On May 10, 2013, Plaintiffs filed proof that the summons and complaint were served upon

Defendant Katzman by hand delivering them to a his Roosevelt Avenue home to a 45-year old

woman who identified herself as his wife, Mrs. Katzman, Docket No. 6, and on May 28, 2013,

Plaintiffs filed proof that the summons and complaint were served upon Defendant Gans Israel

by hand delivering them to a person working on the school's Post Avenue premises who

identified herself as Ms. Cany, Docket No. 8.[5]  None of the Defendants answered or otherwise

responded to the complaint.  At Plaintiffs' request, the Clerk of Court filed the Entry of Default

against Defendants.  Docket No. 11.  Plaintiffs filed a Motion for Default Judgment against

Defendants.  Docket Nos. 12-14.  The Honorable Margo K. Brodie referred the default judgment

motion to me for a report and recommendation.

On November 13, 2013, I held a telephone conference with Plaintiffs' counsel during

which I questioned Plaintiffs' counsel about various pleading and evidentiary deficiencies.[6]

Docket Entry 11/13/2013.  Plaintiffs' counsel declined to amend the complaint to address the

---

[4] Plaintiffs' complaint states in its introduction that the action is also brought under New York Compilation of Codes, Rules and Regulations of the State of New York, Title 12, § 146-1.6.  12 N.Y. Comp. Codes R. & Regs. § 146-1.6.  That particular law dictates an employer's obligations when an employee's spread of hours is greater than 10 in restaurants and all-year hotels.  There are no facts alleged or information provided that suggests that there was any issue of a spread-of-hours for Plaintiffs' employment.  I respectfully recommend that the District Court **deny** Plaintiffs' default judgment motion as it relates to New York Compilation of Codes, Rules and Regulations, Title 12, § 146-1.6.

[5] The affidavit of confirmed execution of summons reads "deponent . . . knew said individual to be GENERAL AGENT thereof."  Docket No. 8.

[6] In Boutros v. JTC Painting and Decorating Corp., No. 12 Civ. 7576 (PAE), 2013 WL 5637659, at *3 (S.D.N.Y. Oct. 15, 2013), the plaintiffs rescued their FLSA claim after the defendants filed a motion to dismiss the plaintiffs' conclusory pleading regarding the $500,000 requirement.  The Boutros Court found that the plaintiffs "inadequately pled enterprise coverage under the FLSA" and invited the plaintiffs an opportunity to amend the complaint, which the plaintiffs accepted and corrected the omission.  Boutros, No. 12 Civ. 7576 (PAE), Docket Nos. 51, 52.

deficiencies at the conference, stating in a letter to the Court that she and other lawyers at her firm believed "this route to be cost prohibitive." <u>Docket No. 15</u>.  In December 2013, Plaintiffs submitted supplemental documents.  <u>Docket Nos. 16, 16-2, 16-6, 16-7, 16-9, 16-10, 16-11, 16-12</u>.

On January 10, 2014, I held an evidentiary hearing during which Plaintiffs gave sworn testimony regarding their claims.  <u>Docket No. 22</u>.  In January 2014, Plaintiffs filed additional supplemental documents.  <u>Docket Nos. 19, 19-1, 23</u>.

For the following reasons, I respectfully recommend that the District Judge:

(1) **dismiss** Defendant CCG from the action entirely;

(2) **deny** Plaintiffs' default judgment motion relating to 12 NYCRR § 146-1.6;

(3) **deny** Plaintiffs' default judgment motion relating to their FLSA claims;

(4) **exercise** supplemental jurisdiction over Plaintiffs' NYLL claims;

(5) **grant** Plaintiff Angela Gonzalez's default judgment motion on liability relating to her claim under NYLL § 191(1)(a);

(6) **grant** Plaintiff Angela Gonzalez's default judgment motion on liability relating to her claim under NYLL § 652(1);

(7) **grant** Plaintiff Angela Gonzalez's default judgment motion for damages pursuant to NYLL § 663, the damages provision for NYLL § 652(1), in the amount of $20,324.90 ($8,536.00 in underpayment of minimum wage, plus $3,252.90 in prejudgment interest, plus $8,536.00 in liquidated damages), plus as additional $2.10 in prejudgment interest for every day including today through the entry of judgment, but **deny** any other damages;

(8) **grant** Plaintiff Veronica Gonzalez's default judgment motion on liability relating to her claim under NYLL § 191(1)(d);

(9) **deny** Plaintiff Veronica Gonzalez's default judgment motion on liability relating to her claim under NYLL § 652(1);

(10) **grant** Plaintiff Veronica Gonzalez's default judgment motion for damages

pursuant to NYLL § 198(1-a), the damages provision for NYLL § 191, in the amount of $22,961.79 ($15,075.00 in unpaid wages, plus $4,118.04 in prejudgment interest (calculated up to yesterday's date), plus $3,768.75 in liquidated damages), plus an additional $3.72 in prejudgment interest for every day including today through the entry of judgment, but **deny** any other damages;

(11)    **grant** Plaintiffs attorneys' fees and costs in the amount of $10,741.22.

## I.    Factual Background

The following facts are taken from the complaint which are taken as true solely for the purposes of determining liability, supplemented as noted with information from the record on the motion.  Defendant Gans Israel is a New York State corporation that is engaged in the education business, specifically, the operation of a preschool at 984 Post Avenue, Staten Island, NY 10302. Docket No. 1 ¶ 8.  Defendant Rabbi Moshe Katzman was, at all relevant times, an officer, director, president, vice president, and/or owner of Defendant Gans Israel.  Docket No. 1 ¶ 9.  In these capacities, Defendant Rabbi Moshe Katzman had complete control over the day-to-day operations of Defendant Gans Israel, including the authority (1) to hire and fire employees; (2) to supervise and control employee work schedules or conditions of employment; (3) to determine the rate and method of payment of employees; and (4) to maintain employment records.  Docket No. 1 ¶¶ 21-23.

In September 2004, Defendant Katzman hired Plaintiff Angela Gonzalez to work as a janitor[7] at Defendant Gans Israel in September 2004, and she continued to work there until June 18, 2012.[8]  Docket No. 1 ¶¶ 7, 12, 24; Jan. 10 Tr. 49:18-20.  As a janitor, Plaintiff Angela

---

[7] Plaintiff Angela Gonzalez worked as a teacher's aide for the first school year—the 2004-2005 school year—she was employed by Defendants, with a wholly different schedule and pay rate. Jan. 10 Tr. 50:9-24.  This information is not relevant to the instant litigation insofar as Plaintiff Angela Gonzalez's claims are based on events occurring from 2006 onward.

[8] Plaintiffs state that there is a six-year statute of limitations to this case and clarify that, although

Gonzalez's schedule was irregular.  She worked on an ad hoc basis, coming in on specific days to clean as requested by Defendants; and would work two to two-and-a-half hours on each day that she worked, for a promised $10.00 per hour.  Docket No. 1 ¶ 15; Jan. 10 Tr. 51:3-11.  Defendant Katzman paid Plaintiff Angela Gonzalez in cash when he paid her at all, but he frequently did not pay her.  Docket No. 1 ¶ 16.

As to damages, Plaintiff Angela Gonzalez testified that she knows she is due $12,900.00 in unpaid wages because while she worked for Defendant Katzman, she maintained a calendar in which she annotated the days she worked, the wages due to her for those days and when, if ever, she was paid.  Jan. 10 Tr. 52:11-13.  Plaintiff Angela Gonzalez transcribed the information from the calendar by hand to paper which was submitted to the Court and which Plaintiff Angela Gonzalez referenced during her January 10, 2014 testimony.  Docket No. 16-2.  An examination of one of the first entries among Plaintiff Angela Gonzalez's transcriptions reveals the general format of her calculations:  "2007—April—11 days—$220."  Docket No. 16-2 at 1.  In other words, in April 2007, Plaintiff Angela Gonzalez worked for Defendants 11 days.  At two hours per day and $10.00 per hour, Plaintiff Angela Gonzalez earned $220.00 in April 2007.  At the January 10, 2014 evidentiary hearing, Plaintiff Angela Gonzalez testified that all of her handwritten notes regarding the total $12,900.00 in wages she was owed by Defendants from 2006 through June 18, 2012 were true, going through the notes with this Court page by page.[9]

---

Plaintiff Angela Gonzalez worked for Defendants from September 2004 through June 18, 2012, Defendants paid Plaintiff Angela Gonzalez in a timely fashion through the end of 2007.  Docket No. 16 ¶ 5.  It was not until early 2008 that Defendants began to fail to pay Plaintiff Angela Gonzalez her due wages.  Id.  This information comes from Leonor H. Coyle's affirmation to the Court, but it does not appear in the Complaint.  Id.

[9] Plaintiff Angela Gonzalez's handwritten notes acknowledge that Defendant Katzman did pay her periodically, and Plaintiffs' counsel has accounted for those payments by not including them in calculations reflecting amounts still owed to Plaintiff Angela Gonzalez.  Docket Nos. 16-2, 16-9.

Jan. 10 Tr. 51:21-55:6.   Plaintiff Angela Gonzalez testified under oath that $500.00 of the total

$12,900.00 she was owed by Defendants accrued during the year 2006, but she could not

remember the month(s) in which she earned those wages.  Jan. 10 Tr. 62:7-8.

        Defendant Katzman hired Plaintiff Veronica Gonzalez to work as a teacher's assistant at

Defendant Gans Israel in September 2009, and she continued to work there until June 18, 2012.

Docket No. 1 ¶ 6, 12, 24.  As a teacher's assistant, Plaintiff Veronica Gonzalez was originally

told that she would work six hours a day at $50.00 per day, and five days a week (in other words,

$250.00 per week).  Id. ¶ 14 (originally alleging $230.00 per week); Jan. 10 Tr. 25:23-26:5

(clarifying that her schedule frequently diverged from this set schedule due to school holidays,

vacations and early releases).  Defendant Katzman paid Plaintiff Veronica Gonzalez in cash,

when he paid her at all.  Docket No. 1 ¶16.  Plaintiff Veronica Gonzalez claims that over the

course of her employment with Defendants from September 2009 through June 18, 2012,

Defendants failed to pay her $15,075.00 in earned but unpaid wages.  Id. ¶ 18.

        As to damages, Plaintiff Veronica Gonzalez testified that she knows she is due

$15,075.00 in unpaid wages because while she worked for Defendant Katzman, she maintained a

calendar in which she annotated all the wages due to her and when, if ever, she got paid.  Jan. 10

Tr. 52:11-13.  Plaintiff Veronica Gonzalez transcribed the information from the calendar by hand

to paper submitted on the motion which she referenced during her January 10, 2014 testimony.

Docket No. 16-2.  An examination of one of the first entries among Plaintiff Veronica

Gonzalez's transcriptions reveals the general format of her calculations:  "2009—September—

$575."  Docket No. 16-2 at 5.  In other words, in September 2009, Plaintiff Veronica Gonzalez

claims that Defendants owed her $575.00 in unpaid wages.  At the evidentiary hearing, Plaintiff

Veronica Gonzalez testified that all of her handwritten notes regarding the $15,075.00 in total wages she was owed by Defendants were true, going through the notes with this Court page by page.[10]  Jan. 10 Tr. 28:20-40:2.

Plaintiffs' attorneys have submitted records in support of their request for attorneys' fees for the work of various legal professionals on this case: (1) Leonor Coyle, an associate at the firm of Virgina & Ambinder LLP who has practiced labor and employment law for approximately 7 years and for whom the firm seeks $395.00 per hour; (2) Lloyd Ambinder, a partner at the firm who has practiced labor and employment law for over 22 years, for whom the firm seeks $525.00 per hour; (3) Laura Birnbaum, a former junior associate at the firm, for whom the firm seeks $200.00 per hour, and (4) seven different paralegals—Ines Cruz, John Fargnoli, Venus Velez, Konstancja Maleszynska, Yelena Fishbeyn, Izabela Gardocka and Yeskenia Polanco, for whom the firm seeks amounts from $90.00 to $125.00 per hour.  Docket Nos. 19, 19-1, Jan. 10 Tr. 60:2-22.

## II.  Default Judgment Legal Standard

When a defendant defaults, a court, on consideration of a plaintiff's default judgment motion, "is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor."  Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009). However, once the factual allegations are accepted as true, a court "is also required to determine whether the [plaintiff's] allegations establish [the defendant's] liability as a matter of law."  Id.

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages."  Greyhound Exhibitgroup,

---

[10] Plaintiff Veronica Gonzalez's handwritten notes acknowledge that Defendant Katzman did pay her periodically, and Plaintiffs' counsel has accounted for those payments by not including them in calculations reflecting amounts still owed to Plaintiff Angela Gonzalez.  Docket Nos. 16-2, 16-9.

Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992).  Damages "usually must be

established by the plaintiff in an evidentiary proceeding in which the defendant has the

opportunity to contest the amount."  Id.

   **III.    Discussion**

   **a. Plaintiffs' Default Judgment Motion On Their FLSA Claim Should Be
       Denied For Failure To Sufficiently Plead Or Present Sufficient Evidence**

The FLSA provides that

> [e]very employer shall pay to each of his employees who in any
> workweek is engaged in commerce or in the production of goods
> for commerce, wages at the following rates:  (1) except as
> otherwise provided in this section, not less than—(A) $5.85 an
> hour, beginning on the 60th day after May 25, 2007; (B) $6.55 an
> hour, beginning 12 months after that 60th day; and (C) $7.25 an
> hour, beginning 24 months after that 60th day."

29 U.S.C. § 206(a)(1); see Docket No. 1 ¶ 27.  If an employer fails to so compensate its

employees, the FLSA provides a private cause of action for an employee to recover unpaid

minimum wages and liquidated damages.  29 U.S.C. § 216(b).

       Before an employer can be held liable under such a private cause of action, however, an

employee must first demonstrate that she is "covered" by the FLSA.  The FLSA minimum-wage

provisions only apply to employees who are "(1) personally engaged in interstate commerce or in

the production of goods for interstate commerce ('individual coverage'), or (2) [were] employed

in an enterprise engaged in interstate commerce or in the production of goods for interstate

commerce ('enterprise coverage')."  Iqbal v. Multani, No. 12 Civ. 3067 (DRH) (GRB), 2013 WL

5329286, at *5 (E.D.N.Y. Sept. 20, 2013); see Jacobs v. N.Y. Foundling Hosp., 577 F.3d 93, 96

(2d Cir. 2009) (stating that the two categories of FLSA coverage "are commonly referred to as

'individual' and 'enterprise' coverage").  Plaintiffs' complaint originally alleged both individual

coverage and enterprise coverage, Docket No. 1 ¶ 32, but in a supplemental submission,

8

Plaintiffs focused on their enterprise-coverage theory but did not brief their individual-coverage theory, stating that "[i]t is undisputed that the Plaintiffs are alleging enterprise coverage in their Complaint," Docket No. 23 at 2.

Individual coverage does not apply here. An individual is covered under the FLSA if that person is "engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 203(r)(1). Plaintiffs do not claim that they were producing any goods for movement in commerce, so the best they can hope for in terms of individual coverage is coverage if they were individually engaged in commerce. According to Department of Labor regulations, individuals are engaged in commerce "when they are performing work involving or related to the movement of persons or things (whether tangibles or intangibles, and including information and intelligence)" between states. 29 C.F.R. § 779.103. The regulation goes on to provide that

> [t]ypically, but not exclusively, employees engaged in interstate or foreign commerce include employees in distributing industries, such as wholesaling or retailing, who sell, handle or otherwise work on goods moving in interstate commerce as well as workers who order, receive, pack, ship, or keep records of such goods; clerical and other workers who regularly use the mails, telephone or telegraph for interstate communication; and employees who regularly travel across State lines while working.

Id.; see Siemieniewicz v. CAZ Contracting Corp., No. 11 Civ. 0704 (JG) (JO), 2012 WL 5183375, at *7 (E.D.N.Y. Sept. 21, 2012) (stating that the plaintiff's allegation that he "worked . . . as a carpenter" did "not suffice to establish [individual coverage] due to [the plaintiff] engag[ing] in commerce or in the production of goods for commerce"); Rodriguez v. Almighty Cleaning, Inc., 784 F. Supp. 2d 114, 120 (E.D.N.Y. 2011) (holding that "individual coverage" did not apply under the FLSA because the plaintiffs, who were employed to clean residential and commercial buildings, "did not alleged that they were personally "performing work involving or related to the movement of persons or things . . . between states"). Plaintiffs' record does not

demonstrate that either Plaintiff Angela Gonzalez, who cleaned the preschool, nor Plaintiff

Veronica Gonzalez, who tended to the basic needs of children at the preschool, fall under the

above definition such that they qualify for individual coverage under the FLSA.  Jan. 10 Tr.

50:9-11 (describing Plaintiff Angela Gonzalez's work for Defendants); Jan. 10 Tr. 25:10-15

(describing Plaintiff Veronica Gonzalez's tasks).

As for enterprise coverage, according to the FLSA, a defendant is an "[e]nterprise

engaged in commerce or in the production of goods for commerce" if the defendant is an

enterprise that

> has employees engaged in commerce or in the production of goods
> for commerce, or that has employees handling, selling, or
> otherwise working on goods or materials that have been moved in
> or produced for commerce by any person; and . . . whose annual
> gross volume of sales made or business done is not less than
> $500,000.

29 U.S.C. § 203(s)(1)(A); see Smith v. Nagai, No. 10 Civ. 8237 (PAE) (JCF), 2012 WL

2421740, at *2 (S.D.N.Y. May 15, 2012) (stating that the plaintiff had fulfilled the FLSA's

interstate commerce requirement with evidence that the defendant, whose principal place of

business was New York, "purchase[d] fish, ginger and flour, among other items" from a New

Jersey supplier).  "Because even 'local business activities fall within the reach of the FLSA when

an enterprise employs workers who handle goods or materials that have been moved or been

produced in interstate commerce, the test is met if plaintiff handled supplies or equipment that

originated out-of-state."  Iqbal, 2013 WL 5329286, at *6 (E.D.N.Y. Sept. 20, 2013) (citations &

quotations omitted).  Plaintiff Angela Gonzalez testified that Defendants purchased for her use,

among other things, Softsoap hand soap, Clorox bleach, and Pine-Sol cleaning products, Jan. 10

Tr. 75:21-22, 76:9, and Plaintiffs' counsel informed the Court that Softsoap has manufacturing

facilities in New Jersey, Tennessee and Ohio, while Clorox has manufacturing facilities in

10

Virginia, Georgia, California, Connecticut, Kentucky, Arkansas, Maryland, Illinois and Kansas, Docket No. 23 at 2.  This testimony was elicited in the context of Plaintiff Angela Gonzalez's janitorial work.  Jan. 10 Tr. 75:15-17.  Plaintiffs have therefore shown that Plaintiff Angela Gonzalez's work for Defendants involved the handling of supplies originating out-of-state.  Plaintiffs would therefore meet the first part of the enterprise coverage prong.

Next comes the question of whether Defendants had annual gross revenue equal to or greater than $500,000.00 for each of the years for which Plaintiffs seek FLSA protection.  See 29 U.S.C. § 203(s)(1)(A) ("'Enterprise engaged in commerce or in the production of goods for commerce' means an enterprise that . . . is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 . . . .").  Plaintiffs seek to satisfy the $500,000.00 FLSA requirement in the Complaint by essentially repeating the legal standard: "Plaintiffs, during all relevant times, were engaged in commerce or in the production of goods for commerce, or were employed in an enterprise engaged in commerce or in the production of goods for commerce."  Docket No. 1 ¶ 32.  Plaintiffs' complaint alleges no specific facts to meet the $500,000.00 requirement.

Most cases in this Circuit that discuss this issue require that a plaintiff plead the specific fact that the defendant did $500,000.00 or more in annual gross business.[11]  For example, in Coulibaly v. Millennium Super Car Wash, Inc., No. 12 Civ. 4760 (CBA) (CLP), 2013 WL 6021668, at *5 (E.D.N.Y. Nov. 13, 2013), the court held on a default motion that because a

_____

[11] This Court has found one case from this district permitting a plaintiff to meet the $500,000 FLSA requirement by pleading statutory language relating to enterprise coverage.  In Rodriguez v. Almighty Cleaning, Inc., 784 F. Supp. 2d 114, 121 (E.D.N.Y. 2011), an FLSA case in a default posture, a court found that the plaintiffs' conclusory pleading satisfied the $500,000 gross annual business threshold for an FLSA action.  In Rodriguez, the plaintiff's conclusory pleading stated that "[a]t all times hereinafter mentioned, the activities of the defendants constituted an 'enterprise' within the meaning of Section 3(r) & (s) of the FLSA, 29 U.S.C. § 203(r) & (s)."  Rodriguez, No. 09 Civ. 2997 (JS) (AKT), Docket No. 1 ¶ 57.

plaintiff did not make a specific $500,000.00 pleading about the defendant for the period for
which plaintiff sought relief, "plaintiff may not recover under the FLSA for that period." See
Boutros v. JTC Painting and Decorating Corp., No. 12 Civ. 7576 (PAE) (S.D.N.Y. Oct. 15,
2013), Docket Nos. 51, 52 (finding that the plaintiffs' complaint would be dismissed for pleading
enterprise coverage by legal conclusion rather than with facts unless they amended their
complaint); Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012) (stating that
pleading specific facts relative to the $500,000.00 requirement is necessary). "[T]he allegation
that [the defendant] is an employer engaged in commerce is no more than the assertion of a legal
conclusion; it must be (but is not) supported by some non-conclusory factual allegation."[12] Id. at
85.

　　　During the January 10, 2014 damages inquest in response to the Court's inquiry,
Plaintiffs' counsel attempted to elicit sufficient evidence from Plaintiffs as testifying witnesses to
satisfy the $500,000.00 requirement, but the testimony elicited falls short of alleging that
Defendants did business in an amount equal to or greater than $500,000.00 for each of the years
for which Plaintiffs seek FLSA relief.[13]  Plaintiff Veronica Gonzalez testified that there were
approximately 29 to 31 paying students attending the pre-school,[14] that the pre-school operated
for ten months, and that sometimes parents handed her tuition checks in amounts ranging from

---

[12] Ultimately, the Court in Gunawan granted the plaintiff's default judgment motion in spite of its
pleading failures because, before the defendant defaulted, it had substantially engaged in the
FLSA litigation and never disputed enterprise coverage.  Gunawan, 897 F. Supp. 2d at 86.

[13] This Court does not decide whether Plaintiffs' counsel's approach to satisfying the $500,000
requirement during a damages inquest is appropriate when the relevant facts should have been
included in the pleading.

[14] There is some question as to whether there were 29 or 31 paying students because Plaintiff
Veronica Gonzalez testified that two of the students were the children of either Defendants or
teachers' assistants and implied that they did not pay tuition.  Jan. 10 Tr. 46:22.

$1,000.00, $2,000.00 or $5,000.00 to pass along to Defendant Katzman's wife.[15]  Jan. 10 Tr. 41:3-42:19, 46:22.  Even if this Court were to generously work with the largest amount of checks seen by Plaintiff Veronica Gonzalez ($5,000.00) and the largest number of paying students attending (31) for the purposes of calculating whether Plaintiffs have shown Defendants to have greater than or equal to $500,000.00 in annual business, the information offered is insufficient to calculate that revenues are $500,000.00 or more.  The record does not show whether the $5,000.00 check was for the tuition of an entire ten-month school year (in which case Plaintiffs have shown $155,000.00 in annual business ($5,000.00 multiplied by 31 students)), for one month's tuition (in which case Plaintiffs have shown $1,550,000.00 in annual business ($5,000.00 multiplied by ten months multiplied by 31 students)), or some other time period.  In other words, without knowing what portion of tuition the checks covered, Plaintiff Veronica Gonzalez's testimony does not show that Defendants met the $500,000.00 gross-annual business requirement for the years for which wages are claimed.

Indeed, Plaintiffs' own counsel herself has never actually taken a firm position that Plaintiffs' evidence satisfied the $500,000.00 requirement.  During the damages inquest, Plaintiff's counsel suggested that in light of Plaintiff Veronica Gonzalez's testimony, "it is quite feasible that the company made $500,000.00 a year."  Jan. 10 Tr. 45:18-19.  Later, Plaintiff's counsel stated that "it's very likely that they did meet that threshold of $500,000.00.  It's possible."  Jan. 10 Tr. 68:12-16.  Finally, this Court gave Plaintiffs' counsel the case citations for Coulibaly, Boutros and Gunawan, and invited Plaintiffs' counsel to submit a supplemental brief on the $500,000.00 annual gross business requirement, the conclusory pleading in Plaintiffs'

---

[15] Plaintiff Angela Gonzalez testified that she knew no information regarding the tuition that parents paid to Defendants for the education and care of their children; therefore, her testimony is neutral on the question of Defendants' gross annual business income.  Jan. 10 Tr. 56:5-9.

complaint and the inquest evidence.  Jan. 10 Tr. 63:19-65:8, 68:12-16, 79:21-80:8.  Plaintiffs'

counsel briefed other issues in her supplemental filing, but as to the $500,000.00 annual gross

business requirement issue had only this to say: "It is undisputed that the Plaintiffs are alleging

enterprise coverage in their Complaint."  Docket No. 23 (citing to the paragraph in Plaintiffs'

Complaint containing the conclusory pleading).

       In light of the foregoing, this Court respectfully recommends that the District Judge **deny**

Plaintiffs' motion for default judgment on their FLSA claims with leave to refile because

Plaintiffs have failed to adequately plead that Defendants have equal to or greater than

$500,000.00 in annual gross business as required for the FLSA to apply.  29 U.S.C. §

203(s)(1)(A).

### b.  This Court Should Exercise Supplemental Jurisdiction Over Plaintiffs' NYLL Claims

       Given that this Court has recommended denying Plaintiffs' default judgment motion

based on the FLSA, only NYLL claims remain on this motion.[16]  Federal district courts have

supplemental jurisdiction over state-law claims "that are so related to claims in the action within

such original jurisdiction that they form part of the same case or controversy under Article III of

the United States Constitution."  28 U.S.C. § 1367(a).  This supplemental jurisdiction is

discretionary, City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 173 (1997), and a district

court "may decline to exercise supplemental jurisdiction" if it "has dismissed all claims over

which it has original jurisdiction," 28 U.S.C. § 1367(c)(3).

       As a general rule, when all federal claims are dismissed from a case, the state claims

should also be dismissed.  See In re Merrill Lynch Ltd. P'ships Litig., 154 F.3d 56, 61 (2d Cir.

---

[16] Although denial of a default motion does not dismiss the FLSA claims, as discussed above, the claims are fatally defective.

1998) (citation & quotation omitted).

Here, it would be appropriate to exercise supplemental jurisdiction over Plaintiffs' NYLL claims.  First, this Court has not recommended that the District Judge dismiss Plaintiffs' FLSA claim, only that the District Judge deny the default judgment motion with leave to refile.  Therefore, original jurisdiction would still exist in this case by virtue of the FLSA claim if Plaintiffs amend the complaint.  In this case, the FLSA and NYLL claims are substantially identical and provide for almost the same relief, except for the 6-year statute of limitations for the NYLL and that the liquidated damages calculations are different.  Third, insofar as this Court has become intimately familiar with all facts of this case by due to its review of the record and various conferences with Plaintiffs, it is well equipped to analyze the NYLL claims which arise out of the same operative facts as the FLSA claim.  It would not be in the interest of judicial economy to dispatch the NYLL claims to state court where a different jurist would have to familiarize him or herself with the case from the beginning.

### c.   Plaintiffs' Default Judgment Motion Relating To Their NYLL Claims Should Be Granted In Part

#### i.   NYLL Generally

"The purpose of [NYLL § 190 et seq.] "was to protect the manual worker who was dependent upon the 'wages' he received weekly for this existence." People v. Bloom, 7 Misc. 2d 1077, 1078 (N.Y. City Ct. 1957).  NYLL § 651(5) defines a covered "employee" as including "any individual employed or permitted to work by an employer in any occupation."  NYLL § 651(5).  The definition goes on to list various exemptions, inter alia, casual baby sitters, farm laborers, and executives and professionals.  N.Y.L.L. § 651(5).  Plaintiffs allege that they are employees under this definition.  Docket No. 1, ¶ 41.  This Court takes those allegations to be true and finds that Plaintiffs are NYLL-covered employees.

NYLL § 651(6) defines employer as "any individual, partnership, association, corporation, limited liability company, business trust, legal representative, or any organized group of persons acting as employer," NYLL § 651(6).  Plaintiffs allege that Defendants Gans Israel and Rabbi Katzman are employers under this definition.  Docket No. 1 ¶¶ 43, 44.  As to the school, Gans Israel, there does not appear to be any question that it was the corporate entity for which Plaintiffs worked.  Plaintiffs also request that this Court find Defendant Katzman personally liable for any damages award to which they are entitled.

Defendant Katzman's personal liability requires some discussion.  In light of the fact that "[t]he New York Court of Appeals has not answered the question of whether the employer test under the NYLL is the same as under the FLSA," Irizarry v. Catsimatidis, 722 F.3d 99, 117 (2d Cir. 2013), "[d]istrict courts in this Circuit have interpreted the definition of employer under the New York Labor Law coextensively with the definition used by the FLSA," Sethi v. Narod, -- F. Supp. 2d --, No. 11 Civ. 2511 (MKB), 2013 WL 5453320, at *23 (E.D.N.Y. Sept. 30, 2013). Individual liability under the FLSA is premised upon 'personal responsibility for making decisions about the conduct of the business that contributed to the violations of the Act." Schear v. Food Scope America, Inc., -- F.R.D. --, No. 12 Civ. 594 (AT), 2013 WL 123305, at *18 (S.D.N.Y. Jan. 10, 2014).  "The Second Circuit has adopted an 'economic reality' test for determining whether an individual qualifies as an 'employer' under the FLSA." Id. (citing Irizarry, 722 F. 3d at 111.  Under that test, a court must consider the "totality of the circumstances" and weigh whether the alleged employer "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999) (citation &

16

quotations omitted).   According to the Second Circuit, these factors do not "comprise a rigid

rule for the identification of an [] employer," but "provide a nonexclusive and overlapping set of

factors to ensure that the economic realities test . . . is sufficiently comprehensive and flexible to

give proper effect to the broad language of the FLSA." Irizarry, 722 F.3d at 105 (citations &

quotations omitted); Carver v. State, 87 A.D.3d 25, 29-30 (2d Dep't 2011) (applying the FLSA

economic realities test).

Plaintiffs' complaint alleges certain facts (which were supported by Plaintiffs' testimony)

that this Court must accept as true on the liability portion of the default motion that correspond to

the economic realities test.  As to the first factor, Plaintiffs allege that Defendant Katzman "had

the power to hire and fire employees for [Defendant Gans Israel]." Docket No. 1 ¶¶ 21-22; Jan.

10 Tr. 25:1-18 (Plaintiff Veronica Gonzalez substantiating the complaint's allegation through

testimony that Defendant Katzman interviewed her for the post of teacher's assistant); Jan. 10 Tr.

49:19-20 (Plaintiff Angela Gonzalez testifying that Defendant Katzman hired her).  As to the

second factor, Plaintiffs allege that Defendant Katzman "supervised and controlled employee

work schedules or conditions of employment for [Defendant Gans Israel]." Docket No. 1 ¶¶ 21-

22; Jan. 10 Tr. 24:25-25:1 (Plaintiff Veronica Gonzalez substantiating the complaint's allegation

through testimony that Defendant Katzman told her what her schedule would be); Jan. 10 Tr.

50:17-51:4 (Plaintiff Angela Gonzalez testifying that Defendant Katzman informed her what her

work schedule would be).  Plaintiffs allege that Defendant Katzman meets the third factor of the

economic realities test as well, insofar as he "determined the rate and method of payment for

[Defendant Gans Israel's] employees." Docket No. 1 ¶¶ 21-22; Jan 2 Tr. 25:19-24 (Plaintiff

Veronica Gonzalez substantiating the complaint's allegation through testimony that Defendant

Katzman informed her what her wages would be); Jan. Tr. 51:4-17 (Plaintiff Angela Gonzalez

testifying that Defendant Katzman told her what her wages would be and when she would be paid).

With regard to the fourth factor of the economic realities test, Plaintiffs alleged in their complaint that that Defendant Katzman "maintained employment records for [Defendant Gans Israel]," but they also stated that Defendants "fail[ed] to maintain proper and complete timesheets or payroll records." Docket No. 1 ¶¶ 20-21. While it is unclear from the record what employment records Defendant Katzman maintained given the contrary assertion that he did not maintain timesheets or payroll records, this Court must take as true Plantiffs' complaint's allegation that Defendant Katzman maintained some employment records, which satisfies the fourth element of the economic realities test.

In light of the fact that Plaintiffs have satisfied the four prongs of the economic realities test, their position that Defendant Katzman was their employer and as such should be held individually liable for any NYLL violation is correct. See Apolinar v. Global Deli & Grocery, Inc., No. 12-Civ. 3446 (RJD) (VMS), 2013 WL 5408122, at *5 (E.D.N.Y. Sept. 25, 2013) (holding that an individual defendant would be personally liable for a NYLL judgment because the plaintiff's complaint "established that [the individual defendant] was a principal [of the corporate defendant], authorized the pay policies at the enterprise, and controlled the conditions of [the plaintiff's] work."); Switzoor v. SCI Eng'g, P.C., No. 11 Civ 9332 (RA), 2013 WL 4838826, at *6 (S.D.N.Y. Sept. 11, 2013) (finding that the individual defendants were personally liable for the plaintiff's FLSA damages because the plaintiff had demonstrated, inter alia, that the defendants were responsible for the day-to-day operations, offered the job to the plaintiff, communicated with the plaintiff as to wages and other aspects of his employment). I respectfully recommend that Defendant Katzman should be held individually liable for any NYLL violations

18

against Plaintiffs herein found.

### ii.   NYLL Statute Of Limitations

"Claims arising pursuant to the NYLL are subject to a six-year statute of limitations."

Coulibaly, 2013 WL 6021668, at *7; N.Y. Lab. Law § 663(3) ("[A]n action to recover upon a

liability imposed by this article must be commenced within six years.").  Counting back six years

from the date of Plaintiffs' filing of their Complaint shows that Plaintiffs cannot recover any

unpaid wages earned prior to December 21, 2006.  Docket No. 1.  The only portion of Plaintiffs'

NYLL claims implicated by this cutoff is Plaintiff Angela Gonzalez's request for $500.00 in

back wages that she earned at some unidentified moment in 2006.[17]  Docket Nos. 16-2, 16-6, 16-

9.  Plaintiff Angela Gonzalez cannot remember when in 2006 she earned these wages; therefore,

she has not met her burden of showing that they were earned at a time such that their recovery is

permitted by the statute of limitations.  Jan. Tr. 52:7-8.  In the ensuing discussion relating to

Plaintiff Angela Gonzalez's NYLL claims, this Court reduces Plaintiff Angela Gonzalez's

request for recovery by $500.00 as this amount falls outside of the NYLL's statute of limitations,

and will hereinafter refer to Plaintiff Angela Gonzalez's request for recovery in the amount of

$12,400.00.[18]

### iii.   Prohibition On Double Recovery Under NYLL

Plaintiffs allege that Defendants violated both NYLL § 191, which governs employers'

failure to pay wages, and NYLL § 652(1), which governs employers' failure to pay minimum

---

[17] Plaintiff Veronica Gonzalez's claims involve unpaid wages accruing in or after September 2009, and so Plaintiff Veronica Gonzalez's claim has no statute-of-limitations problem.

[18] The $12,400 balance of Plaintiff Angela Gonzalez's NYLL claims do not present a statute-of-limitations problem insofar as they arise from unpaid wages accrued between April 2007 and June 2012, well within six years of the complaint's filing.  Docket No. 16-2, 16-6, 16-9.  Plaintiff Veronica Gonzalez's claims for $15,075.00 in unpaid wages arising between September 2009 and June 2012 are similarly timely for the purposes of the NYLL's statute of limitations.  Id.

wages.  N.Y. Lab. Law §§ 191, 652(1).

Plaintiffs are only entitled to recover under one statute for the same hours of unpaid wages; double recovery of the same wages and related damages is not permitted.  See Jiao v. Shi Ya Chen, No. 03 Civ. 0165 (DF), 2007 WL 4944767, at *17 (S.D.N.Y. Mar. 30, 2007) ("Where a plaintiff is entitled to damages under both federal and state wage law, a plaintiff may recover under the statute which provides the greatest amount of damages."); Alexander J. Callen, Avoiding Double Recovery: Assessing Liquidated Damages in Private Wage & Hour Actions Under the Fair Labor Standards Act & the New York Labor Law, 81 Fordham L. Rev. 1881 (2013).  In Wing Kwong Ho v. Target Const. of N.Y., Corp., No. 08 Civ. 4750 (KAM) (RER), 2011 WL 1131510, at *15 (E.D.N.Y. Mar. 28, 2011), a court in this district extended Jiao to deny a plaintiff relief under the NYLL § 652(1) because the "plaintiff is recovering unpaid wages pursuant to [NYLL § 191], and because the court has determined the recovery under that provision would be greater than recovery under the minimum wage provision, plaintiff is not entitled to recover additional damages for minimum wage violations."

Therefore, this Court will in the following sections determine first whether and to what extent Plaintiff Angela Gonzalez and Plaintiff Veronica Gonzalez are entitled to monetary relief from Defendants under NYLL § 191 and its damages provision NYLL § 198(1-a), which provides for twenty-five percent liquidated damages, and then under NYLL § 652(1) and its damages provision NYLL § 663, which provides for one-hundred percent liquidated damages. Once these respective analyses are concluded, this Court will compare the results to determine which statute provides the basis for a better recovery for each Plaintiff.  While at first blush one may wonder why Plaintiff Angela Gonzalez, for example, would ever want to recover under NYLL § 652(1), which guarantees a minimum wage lower than the $10.00 per hour that

20

Defendants promised her than she may recover under NYLL § 191, the answer lies in the

minimum-wage law's provision for greater liquidated damages.  It is possible that when the

different wage damages formulae are applied, one statute may award a plaintiff greater damages

than under another statute.  Of course, as previously noted, to the extent the damages would be

awarded under each statute to right the same wrongs, a plaintiff cannot collect twice.

### iv.  NYLL § 191 Claims

#### 1.  Defendants Are Liable Under NYLL § 191(1)(a) For Plaintiff Angela Gonzalez's Unpaid Wages, But Defendants Are Not Liable Under NYLL § 191(1)(a) For Plaintiff Veronica Gonzalez's Unpaid Wages

NYLL § 191(1)(a) provides that "[a] manual worker shall be paid weekly and not later

than seven calendar days after the end of the week in which the wages are earned; provided

however that a manual worker employed by . . . a non-profitmaking organization shall be paid in

accordance with the agreed terms of employment, but not less frequently than semi-monthly."

NYLL § 191(1)(a); Myers v. Hertz Corp., 624 F.3d 537, 543 (2d Cir. 2010) (stating that N.Y.

Lab. Law § 191 "guarantees the timely payment of wages by employers").[19]

Indispensable to the appropriate application of NYLL § 191(1)(a) is the definition of the

term "manual worker."  See Pachter v. Bernard Hodes Group, Inc., 505 F.3d 129, 132 (2d Cir.

2007) ("[Section 191] details the frequency of payments for specific workers[, namely] manual

workers, railroad workers, commission salesmen, and 'clerical and other worker[s].'"  NYLL §

190(4) defines "manual worker" to mean "a mechanic, workingman or laborer."  N.Y. Lab. Law

§ 190(4); see Cuzco v. Orion Builders, Inc., No. 06 Civ. 2789 (KMW) (THK), 2010 WL

---

[19] Plaintiffs' counsel incorrectly describes her clients' NYLL § 191 claim insofar as she states that "workers such as the Plaintiffs are entitled to be paid all their weekly wages 'not later than seven calendar days after the end of the week in which the wages are earned.'"  Docket No. 1 ¶ 46.  This statutory language specifically quotes from NYLL § 191(1)(a) and no other section of NYLL § 191.  See N.Y. Lab. Law § 191(1)(a).

2143662, at *4 (S.D.N.Y. May 26, 2010) (finding that construction and carpentry workers are manual workers for the purposes of NYLL § 191(1)(a)(i) and citing to <u>Mitchell</u> for the proposition that the words "manual worker" should be interpreted as they are "normally and naturally used").  Obviously Plaintiff Angela Gonzalez and Plaintiff Veronica Gonzalez are not mechanics, so the question becomes whether they are eligible for NYLL 191(1)(a)'s protections as "working [persons] or laborer[s]."

 In general, the New York State Department of Labor looks at the duties performed by an employee in order to determine whether he or she is a "manual worker" and makes a case-by-case determination.  <u>See</u> N.Y. Dep't of Labor Counsel Opinion Letter RO-09-0066, May 21, 2009, available at http://labor.ny.gov/legal/counsel/pdf/Other/RO-09-0066%20Manual%20 Workers.pdf (last accessed Feb. 1, 2014).  "[T]he mere <u>description</u> of an employee as [having a particular job title] is not sufficient for a determination that such employee is a 'manual worker.'"  N.Y. Dep't of Labor Counsel Opinion Letter RO-08-0061, December 4, 2008, available at http://labor.ny.gov/legal/counsel/pdf/Employment%20Classification/RO-08- 0061%20-%20Manual%20Workers.doc.pdf (last accessed Feb. 1, 2014).  "It has been [the] Department's longstanding interpretation of the term 'manual workers' that the term includes more than 25 percent of their working time performing physical labor."  <u>See</u> N.Y. Dep't of Labor Counsel Opinion Letter RO-09-0066.  For example, in N.Y. Dep't of Labor Counsel Opinion Letter RO-08-0061, the agency discussed that pizzeria workers would qualify as "manual workers" if they spent more than 25 percent of their time

> lifting and carrying large bags of flour, heavy pitchers of water, and boxes filled with tomatoes, sauce, cheese and other ingredients; cleaning and operating of dough mixing equipment; preparing dough for proofing and stacking and moving proofing racks; and cleaning of the prep area, pots and pans, and the food service area and floors at the end of the day.

N.Y. Dep't of Labor Counsel Opinion Letter RO-08-0061; see N.Y. Dep't of Labor

Counsel Opinion Letter RO-08-0061; Lopez-Martinez v. Gokul Inc. of N.Y., No. 12 Civ.

467 (GLS/RFT), 2013 WL 6145795, at *1 (N.D.N.Y. Nov. 21, 2013) (denying the

defendants' motion to dismiss the plaintiffs' FLSA and NYLL claims, mentioning that

"defendants employed plaintiffs as manual workers, whose primary job duties included

cleaning guest rooms and doing the laundry").

      This Court finds that Plaintiff Angela Gonzalez's janitorial work for Defendants

qualifies her as a manual worker.  Docket No. 1 ¶¶ 11-12; Jan. 10 Tr. 50:9-11 (Plaintiff

Angela Gonzalez testified that her duties as a janitor were "cleaning the school").

      Given that Plaintiff Angela Gonzalez stopped working for Defendants on June 18, 2012,

and that Defendants still have not paid her $12,400.00 in back wages, I respectfully recommend

that the District Judge find that Defendants are liable for violating NYLL § 191(1)(a)'s

requirement that her earned wages be paid within seven days.[20]  N.Y. Lab. Law § 191(1)(a).

      A more difficult question is whether the manual laborer statute covers Plaintiff Veronica

Gonzalez's work as a teacher's assistant, which she testified involved caretaking activities

relating to children: putting them to sleep, feeding them, supervising them while they drew

pictures, changing their diapers and taking the potty-trained ones to the bathroom.  Jan. 10 Tr.

25:10-15.  Certainly any of these activities might involve some degree of physical labor; for

example, putting children to sleep might involve carrying heavy sleeping mats; feeding children

might require lifting large boxes of cookies or milk to and from a pantry; and changing diapers

---

[20] If Defendant Gans Israel is a non-profitmaking organization, NYLL § 191(1)(a)'s requirement
for manual workers is that their wages be paid "not less frequently than semi-monthly."  N.Y.
Lab. Law § 191(1)(a).  This Court does not decide if Defendant Gans Israel was a non-
profitmaking organization because even under that more liberal time frame for payment,
Defendants are still delinquent.

might require lifting hefty toddlers.  The record does not make clear what percentage of Plaintiff

Veronica Gonzalez's days were devoted to such physical labor.  Without such information, this

Court cannot say that Plaintiff Veronica Gonzalez was a manual worker under the NYLL.

Therefore, this Court finds that she is not entitled to NYLL § 191(1)(a)'s protections.  See

Nornberg v. Thai Magic Co., Inc., 814 N.Y.S.2d 891 (Table), at *1-2 (N.Y. Sup. 2006) (holding

that the president of a jewelry wholesaler who had accounts and oversaw her employees and

their accounts was not a manual worker); People ex rel. Mitchell v. Interborough Rapid Transit

Co. ("Mitchell"), 169 A.D. 32, 35 (1st Dep't 1915) ("It scarcely needs argument to show that the

following are not within the [definition of manual worker]: Stenographer, accountant, typist,

chainman, levelman, civil engineers . . . bookkeeper, draftsman, structural designer, and clerk.").

### 2. Defendants Are Liable Under NYLL § 191(1)(d) For Plaintiff Veronica Gonzalez's Unpaid Wages

Plaintiff Veronica Gonzalez has a claim for unpaid wages under a different NYLL

statute.  Docket No. 1 ¶¶ 11 ("Beginning in or about September, 2009, Defendants employed

Plaintiff [VG] to perform work as a teacher's assistant at Defendant Gans Israel Pre-School"),

45 ("Plaintiffs' agreed upon wage rate compensation was within the meaning of NYLL §§ 190,

191, and 651").  "Section 191 sets forth the frequency of payments in which every employer is

bound to pay wages.  Specifically listed are the following:  manual worker, railroad worker,

commission salesman and then finally, the catchall category in  Section 191(1)(d), 'clerical and

other worker.'"  Williams v. AGK Commc'n, Inc., 542 N.Y.S.2d 122, 125 (N.Y. Sup. 1989)

(emphasis added); see Lauria v. Herrnan, 607 F. Supp. 2d 403, 407 (E.D.N.Y. 2009) (describing

"clerical and other worker" provision of NYLL § 191 as a "catch-all provision").  NYLL §

191(1)(d) provides that "[a] clerical and other worker shall be paid the wages earned in

accordance with the agreed terms of employment, but not less frequently than semi-monthly, on

24

regular pay days designated in advance by the employer." N.Y. Lab. Law § 191(1)(d) (making no mention of a seven-day time limit).

NYLL § 190(7) defines "clerical and other worker" as "includ[ing] all employees not included [in the definitions for manual worker, railroad worker, and commission salesman], except any person employed in a <u>bona fida</u> executive, administrative or professional capacity whose earnings are in excess of nine hundred dollars a week." N.Y. Lab. Law § 190(7). As Plaintiff Veronica Gonzalez's earnings per week were, as per her testimony, at most $250.00 per week, Plaintiff Veronica Gonzalez qualifies as a "clerical or other worker" entitled to NYLL § 191(1)(d)'s protections. Jan. 10 Tr. 25:23-26:5.

Given that Plaintiff Veronica Gonzalez stopped working for Defendants on June 18, 2012, and that Defendants still have not paid her $15,075.00 in back wages, I respectfully recommend that the Court hold that Defendants are liable for violating NYLL § 191(1)(d)'s requirement that her earned wages not be paid "less frequently than semi-monthly." N.Y. Lab. Law § 191(1)(d).

### 3. Plaintiffs' NYLL § 191 Damages

If an employer wrongfully withholds earned wages under NYLL § 191, an employee may sue to recover the wages, prejudgment interest, as well as liquidated damages of twenty-five percent of the withheld wages. See <u>Michalek v. Amplify Sports & Entm't LLC</u>, No. 11 Civ. 508 (PGG), 2012 WL 2357414, at *4 (S.D.N.Y. June 20, 2012) (citing to N.Y. Lab. Law § 198(1-a)). NYLL § 198(1-a) provides that the twenty-five percent liquidated damages are not recoverable if the "employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law," a statutory exception not applicable here in light of Defendants' nonappearance. N.Y. Lab. Law § 198(1-a).

### a.  Plaintiff Angela Gonzalez's NYLL § 191 Damages[21]

Under NYLL § 191, Plaintiff Angela Gonzalez's damages include unpaid wage interest and liquidated damages.  Plaintiff Angela Gonzalez has demonstrated through her testimony and documentary submissions that Defendant Katzman agreed to pay her $10.00 per hour to work as a janitor for the preschool and that Defendants are $12,400.00 in arrears on wages due for work she performed from April 2007 through June 18, 2012.  Jan. 10 Tr. 51:3-11, Docket Nos. 16-2, 16-9.  I would find that Plaintiff Angela Gonzalez is entitled to $12,400.00 in unpaid wages.  Docket No. 16-9 at 2-3.

The statutory rate of interest under New York law is nine percent per year.  NYCPLR § 5004 ("Interest shall be at the rate of nine per centum per annum, except where otherwise provided by statute.").   When, as here, "damages were incurred over a period of time, interest may be calculated from the date damages were incurred or upon all of the damages from a single reasonable intermediate date."  Hernandez v. Punto y Coma Corp., No. 10 Civ. 3149 (NGG) (RML), 2013 WL 4875074, at *9 (E.D.N.Y. Sept. 11, 2013) (applying a single reasonable intermediate date—the midpoint of employment—in an FLSA and NYLL case).  I would find that Plaintiff Angela Gonzalez is entitled to simple prejudgment interest in the amount of $4,736.12 as of today's date (calculated by multiplying $12,400.00 by 9 percent annual interest ($1,116.00), dividing that amount by 365 days for a daily interest rate ($3.06), and multiplying that amount by the 1,549 days that have passed from November 9, 2009 (the midpoint of Plaintiff Angela Gonzalez's employment under the statute of limitations) until today).  I would also find that Plaintiff Angela Gonzalez is entitled to simple prejudgment interest in the amount

---

[21] This Court will calculate the potential damages under both NYLL § 191 (unpaid wages) and NYLL § 652(1) (failing to pay minimum wage) violations in order to determine which is greater for Plaintiff Angela Gonzalez.

of $3.05 per day (including today) through the date of entry of judgment.

Finally, because twenty-five percent of $12,400.00 is $3,100.00 and awardable liquidated damages, I would find that Plaintiff Angela Gonzalez is entitled to $3,100.00 in liquidated damages.

In total, this would mean that under NYLL § 191, Defendants would owe Plaintiff Angela Gonzalez damages in the amount of $20,236.12 ($12,400.00 in unpaid wages, plus $4,736.00 in prejudgment interest, plus $3,100.00 in liquidated damages), plus an additional $3.06 in prejudgment interest for every day starting today through the entry of judgment.

### b. Plaintiff Veronica Gonzalez's NYLL § 191 Damages

Plaintiff Veronica Gonzalez's damages calculation under NYLL § 191 are similar. Plaintiff Veronica Gonzalez has demonstrated through her testimony and documentary submissions that Defendant Katzman agreed to pay her $50.00 per day to work as a teacher's assistant for the preschool and that Defendants are $15,075.00 in arrears on wages due for work she performed from September 2009 through June 18, 2012.  Jan. 10 Tr. 25:23-26:5, Docket Nos. 16-2, 16-9.  I would find that Plaintiff Veronica Gonzalez is entitled to $15,075.00 in damages.

Again, working with a nine percent statutory rate of interest, I would find that Plaintiff Veronica Gonzalez is entitled to simple prejudgment interest in the amount of $4,118.04 not including today's date (calculated by multiplying $15,075.00 by 9 percent annual interest ($1,356.75), dividing that amount by 365 days for a daily interest rate ($3.72), and multiplying that amount by the 1,107 days that have passed from January 25, 2011 (the midpoint of Plaintiff Veronica Gonzalez's employment) until today).  I also would find that Plaintiff Veronica Gonzalez is entitled to simple prejudgment interest in the amount of $3.72 per day (starting

27

today) through the date of entry of judgment.

Finally, because twenty-five percent of $15,075.00 is awardable as liquidated damages, I would find that Plaintiff Veronica Gonzalez is entitled to $3,768.75 in liquidated damages.

In total, this would mean that Defendants would owe Plaintiff Veronica Gonzalez damages under NYLL § 191 in the amount of $22,961.79 ($15,075.00 in unpaid wages, plus $4,118.04 in prejudgment interest (calculated excluding today's date), plus $3,768.75 in liquidated damages), plus an additional $3.72 in prejudgment interest for every day starting today through the entry of judgment.

### v.   NYLL § 652(1) Claims

The New York Minimum Wage Act provides that "[e]very employer shall pay to each of its employees for each hour worked a wage of not less than . . . $7.15 on and after January 1, 2007 [and] $8.00 on and after December 31, 2013 . . . or, if greater, such other wages as may be established by federal law pursuant to 29 U.S.C. section 206 . . . ."  N.Y. Lab. Law § 652(1). Section 206(a)(1)(c), Title 29, increased the federal minimum wage to $7.25 per hour as of July 25, 2009, such that the New York Minimum Wage Act by its terms mandated that rate in New York State as of that date as well.  See Apolinar, 2013 WL 5408122, at *12 ("As of July 25, 2009, the minimum wage was $7.25 per hour pursuant to both the FLSA and the NYLL).

Plaintiffs allege a violation of NYLL § 652(1) because regardless of the amount Defendants promised to pay them, if this Court were to take what Plaintiffs actually received and divide it by the hours they worked, the quotient would be less than the statutorily prescribed minimum wage.

28

### 1.   Plaintiff Angela Gonzalez's NYLL § 652(1) Claim

#### a.   Defendants Are Liable Under NYLL § 652(1) For Failing To Pay Plaintiff Angela Gonzalez Minimum Wage

Plaintiff Angela Gonzalez alleges that Defendants' failure to pay her $12,400.00 in earned wages from her work from April 2007 through June 2012 means that Defendants did not pay her the minimum wage during that period in violation of NYLL § 652(1).  N.Y. Lab. Law § 652(1).  During this same period, Defendants only paid Plaintiff Angela Gonzalez $1,500.00 for 1,390 hours worked.[22]  Docket No. 16-2.  In effect, during the period in question, Defendants paid Plaintiff Angela Gonzalez $1.08 per hour ($1,500.00 divided by 1,390).

In order to calculate the minimum wage owed to Plaintiff Angela Gonzalez for the relevant period, one must first multiply the 406 hours Plaintiff worked from April 2007 through June 2009 by the $7.15 per hour New York minimum wage at the time.  N.Y. Lab. Law § 652(1); 29 U.S.C. § 206(a)(1)(C).  Plaintiff Angela Gonzalez is entitled to $2,902.00 in minimum wage for April 2007 through June 2009.  Next, one must multiply the 984 hours Plaintiff worked from September 2009 through June 2012 by the $7.25 per hour New York minimum wage at the time.  N.Y. Lab. Law § 652(1); 29 U.S.C. § 206(a)(1)(C).  Plaintiff Angela Gonzalez is entitled to $7,134.00 in minimum wage for September 2009 through June 2012.  Plaintiff was therefore entitled to $10,036.00 ($2,902.00 plus $7,134.00) in minimum wage for

---

[22] This Court calculated how many hours Plaintiff Angela Gonzalez worked in the relevant period from the fact that she earned $10.00 per hour, Jan. 10 Tr. 51:7, and from information in her handwritten transcription of her records, Docket No. 16-2.  For example, simple math shows that in April 2007, when Plaintiff worked 11 days and was due $220.00, she worked 22 hours.  Id. at 1.  I did this simple math for each month for which Plaintiff Angela Gonzalez submitted her pay records and arrived at the sum 1,390 hours. Jan. 10 Tr. 51:21-55:6 (testifying how her handwritten notes can help the Court determine how many hours she worked during the relevant period—for the entry "2007—April—11 days—$220," for example, this Court can deduce that Plaintiff, who made $10.00 per hour, worked 22 hours during the month of April 2007).

the relevant period.  In light of the fact that Plaintiff Angela Gonzalez's evidence demonstrates

that Defendants paid her only $1,500.00 from April 2007 through June 2012, I find that

Defendants violated NYLL § 652(1)'s minimum wage requirements as to Plaintiff Angela

Gonzalez.  Docket No. 16-2.

### b.  Plaintiff Angela Gonzalez's Damages Arising From Her NYLL § 652(1) Claim

NYLL § 663 provides that

> [i]f any employee is paid by his or her employer less than the wage
> to which he or she is entitled under the provisions of this article, he
> or she shall recover in a civil action the amount of such
> underpayments, together with costs all reasonable attorney's fees,
> prejudgment interest as required under the civil practice law and
> rules, and unless the employer proves a good faith basis to believe
> that its underpayment of wages was in compliance with the law, an
> additional amount as liquidated damages equal to one hundred
> percent of the total of such underpayments found to be due.

N.Y. Lab. Law § 663(1).  Therefore, Plaintiffs' available recovery under the NYLL § 191, as

opposed to the NYLL § 652(1), differs in two material respects.  First, Plaintiffs' recovery under

NYLL § 191 encompasses the entire amount of Defendants' promised wage, while Plaintiffs'

recovery under NYLL § 652(1) is capped at the amount of the New York State minimum wage

at the relevant time.  Compare NYLL § 191 with NYLL § 652(1).  Second, Plaintiffs' recovery

under the NYLL § 191 permits liquidated damages in the amount of twenty-five percent of

unpaid promised wages, N.Y. Lab. Law § 198(1-a), while Plaintiffs' recovery under NYLL §

652(1) permits liquidated damages in the amount of one-hundred percent of unpaid minimum

wages, N.Y. Lab. Law § 663.

Plaintiff Angela Gonzalez worked 406 hours from April 2007 through June 2009 when

the New York minimum wage was $7.15 per hour, entitling her to $2,902.00 in minimum wage

for that period.  Docket No. 16-2, Jan. 10 Tr. 51:21-55:6 (testifying how her handwritten notes

can help the Court determine how many hours she worked during the relevant period—for the entry "2007—April—11 days—$220," for example, this Court can deduce that Plaintiff, who made $10.00 per hour, worked 22 hours during the month of April 2007).  She also worked 984 hours from September 2009 through June 2012 when the New York minimum wage was $7.25 per hour, entitling her to $7,134.00 in minimum wage for that period.  Id.  Together, Plaintiff Angela Gonzalez earned $10,036.00 in minimum wage for the period relevant to this action. Plaintiff Angela Gonzalez admits that Defendants paid her $1,500.00 of this, which means that Defendants' underpayment to meet their minimum wage obligations to Plaintiff Angela Gonzalez for the relevant period is $8,536.00.

Using the statutory rate of interest of nine percent per year, NYCPLR § 5004, I find that Plaintiff Angela Gonzalez is entitled to simple prejudgment interest in the amount of $3,252.90 as of today's date (calculated by multiplying $8,536.00 by 9 percent annual interest ($768.24), dividing that amount by 365 days to gain a daily interest rate ($2.10), and multiplying that amount by the 1,549 days that have passed from November 9, 2009 (the midpoint of Plaintiff Angela Gonzalez's employment) through yesterday).  I also find that Plaintiff Angela Gonzalez is entitled to simple prejudgment interest in the amount of $2.10 per day (starting today) through the date of entry of judgment.

Finally, as total liquidated damages, because one-hundred percent of $8,536.00 is $8,536.00, I find that Plaintiff Angela Gonzalez is entitled to $8,536.00 in liquidated damages for Defendants violation of NYLL § 652(1).

In total, this would mean that Defendants would owe Plaintiff Angela Gonzalez damages under NYLL § 652(1) in the amount of $20,324.90 ($8,536.00 in underpayment of minimum wage plus $3,252.90 in prejudgment interest plus $8,536.00 in liquidated damages), plus as

additional $2.10 in prejudgment interest for every day including today through the entry of judgment.  Plaintiff Angela Gonzalez would thus achieve a greater recovery under the NYLL § 652(1)'s minimum-wage provision than under NYLL § 191.

> ## 2. Defendants Are Not Liable Under NYLL § 652(1) For Failing To Pay Plaintiff Veronica Gonzalez Minimum Wage

This Court finds that Defendants are not liable under NYLL § 652(1) for failing to pay Plaintiff Veronica Gonzalez minimum wage because, unlike Plaintiff Angela Gonzalez, Plaintiff Veronica Gonzalez's testimony does not enable this Court to determine how many hours she worked during the relevant period.  Plaintiff Veronica Gonzalez testified that she worked five days a week and made $50.00 per day ($250.00 per week), and that she worked approximately six hours a day.  Jan. 10 Tr. 25:23-26:5.  Plaintiff Veronica Gonzalez's testimony combined with her handwritten notes revealed that the situation was much more irregular.  For example, Plaintiff Veronica Gonzalez claims through her handwritten notes that Defendants owed her $575.00 in September 2009.  Docket No. 16-2.  During the inquest, this Court asked Plaintiff Veronica Gonzalez, in light of her testimony that Defendants had agreed to pay her $50.00 per day ($250.00 per week or $1,000.00 per month), how Defendants could owe her $575.00 for September 2009 when that fell far short of the $1,000.00 one would suppose was due to her.  Jan. 10 Tr. 29:24, 30:18-21.  Plaintiff Veronica Gonzalez responded that she had only worked two-and-a-half weeks during September 2009, the first month of the school year.  Jan. 10 Tr. 30:13.

This Court then asked Plaintiff Veronica Gonzalez how, even if she only worked two-and-a-half weeks during September 2009, she could have concluded that Defendants owed her an amount that was not a multiple of $50.00 or $250.00.  Jan. 10 Tr. 30:18-21.  Plaintiff Veronica Gonzalez attempted to resolve the discrepancy by telling the Court, for the first time, that her

claimed wages during September 2009 were not a clean multiple of $50.00 because she also helped her sister, Plaintiff Angela Gonzalez, with the cleaning "and that was a few hours" at which she was paid $10.00 per hour.  Jan. 10 Tr. 30:22-31:3.  Plaintiff Veronica Gonzalez stated that September 2009 was the only month when she helped her sister clean for $10.00 per hour, Jan. 10 Tr. 31:7, which raised the obvious question of how she had been able to conclude in October 2009 that Defendants owed her $690.00 in wages when that was not a multiple of $50.00, either.  Jan. 10 Tr. 31:8-10.  Plaintiff Veronica Gonzalez responded that "[i]n October an incident occurred at the school.  School was closed.  That is why I did not work all of the hours," Jan. 10 Tr. 31:14-16.  This line of questioning continued for November 2009, for which Plaintiff Veronica Gonzalez claimed $840.00, again not a multiple of $50.00, which she explained as being "[b]ecause Jewish people have like holidays.  In November they have one of those.  I did not work every day . . . . [S]ome days we left early."  This Court commented that without more specific information, it would be difficult to deduce an hourly wage for Plaintiff Veronica Gonzalez, Jan. 10 Tr. 33:12-19, whereupon Plaintiffs' counsel conceded that Plaintiff Veronica Gonzalez would be unable to offer additional detail about the specific hours giving rise to a particular annotation "given the time that has transpired" since the time Plaintiff Veronica Gonzalez earned the wages, Jan. 10 Tr. 33:20-34:1.

Given Plaintiffs' counsel's concession that Plaintiff Veronica Gonzalez could not remember her work schedule with sufficient specificity to permit a calculation of even approximately how many hours she worked during the relevant period, this Court does not have an adequate record from which to determine how many hours Plaintiff Veronica Gonzalez worked.  This number or an approximation is essential to this Court's ability to review whether

Defendants violated NYLL § 652(1) as to Plaintiff Veronica Gonzalez.[23]  This Court therefore finds that Defendants are not liable to Plaintiff Veronica Gonzalez for a minimum-wage violation under NYLL § 652(1).

### vi.   Conclusion As To NYLL Wage Claims

In light of the fact that Plaintiff Angela Gonzalez would receive greater relief under NYLL § 663 than under NYLL § 198(1-a), I respectfully recommend that the District Judge **grant** Plaintiff Angela Gonzalez's default judgment motion under that statute and order Defendants to pay Plaintiff Angela Gonzalez damages under NYLL §§ 652(1) and 663 in the amount of $20,324.90 ($8,536.00 in underpayment of minimum wage, plus $3,252.90 in prejudgment interest, plus $8,536.00 in liquidated damages), plus as additional $2.10 in prejudgment interest for every day including today through the entry of judgment.  I respectfully recommend that the District Judge **deny** Plaintiff Angela Gonzalez's default judgment motion for damages under NYLL §§ 191(1)(a) and 198(1-a).

In light of the fact that Plaintiff Veronica Gonzalez can only receive relief under NYLL § 191(1)(d), I respectfully recommend that the District Judge **grant** Plaintiff Veronica Gonzalez's default judgment motion under that statute and order Defendants to pay Plaintiff Veronica Gonzalez damages under NYLL § 191(1)(d).  In total, this would mean that Defendants would have to pay Plaintiff Veronica Gonzalez damages under NYLL § 191 and 198(1-a) in the amount of $22,961.79 ($15,075.00 in unpaid wages plus $4,118.04 in prejudgment interest (calculated up to yesterday's date) plus $3,768.75 in liquidated damages), plus an additional $3.72 in

---

[23] Plaintiff Veronica Gonzalez's inability to testify specifically with regard to hours worked has no bearing on her satisfaction of a NYLL § 191(1)(d) claim.  For the purposes of Plaintiff Veronica Gonzalez's NYLL § 191(1)(d) claim, this Court finds that Plaintiff Veronica Gonzalez testified credibly that she was certain that she recorded the total monthly amounts of wages due contemporaneously and accurately.  Jan. 10 28:1-19, 35:4-7.

prejudgment interest for every day including today through the entry of judgment.  I respectfully recommend that the District Judge **deny** Plaintiff Veronica Gonzalez's default judgment motion under NYLL §§ 652(1) and 663.

### d.  Attorney's Fees And Costs

In any action brought under the NYLL, successful plaintiffs may recover reasonable attorneys' fees and costs, to be paid by the defendant.  N.Y. Lab. Law §§ 198(1-a), 663(1).  Reasonable attorneys' fees are determined by calculating the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.  See Cuevas v. Ruby Enters. of N.Y. Inc., No. 10 Civ. 5257 (JS) (WDW), 2013 WL 3057715, at *2 (E.D.N.Y. June 17, 2013); Short v. Manhattan Apts., Inc., 286 F.R.D. 248, 255 (S.D.N.Y. 2012).

"To determine reasonable hourly rates, courts first examine the attorney's experience." Custodio v. Am. Chain Link & Const., Inc., No. 08 Civ. 7148 (GBD) (HBP), 2014 WL 116147, at *2 (S.D.N.Y. Jan.13, 2014).  Then, courts should look to those rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  Luciano v. Olsten Corp., 109 F.3d 111, 115 (2d Cir. 1997).  The relevant "community" for this investigation is "the district in which the court sits."  Polk v. N.Y. State Dep't of Corr. Servs., 722 F.2d 23, 25 (2d Cir. 1983).

Attorney Lloyd Ambinder has been litigating wage and hour claims for 22 years and is a name partner at the law firm representing Plaintiffs.  Id. ¶5.  He bills at $525.00 an hour, which is too high for this district, particularly in light of the default posture of this case.  I find that it would be appropriate to reduce Mr. Ambinder's hourly rate in this case to $350 per hour.  See Mejia v. East Manor USA Inc., No. 10 Civ. 4313 (NG), 2013 WL 3023505, at *9 (E.D.N.Y. Apr. 19, 2013) (finding $525 per hour too high for Mr. Ambinder in an FLSA default case); Shim v.

Millenium Grp., No. 08 Civ. 4022 (FB) (VVP), 2010 WL 554695, at *3 (E.D.N.Y. June 21,

2010) (setting a partner's rate at $350.00 for a default FLSA and NYLL matter).

    Next, attorney Leonor Coyle has been a practicing attorney since 2007[24] and litigating

wage and hour claims in particular since 2009.  Docket No. 19 ¶ 4.  Ms. Coyle states that she

bills $395.00 per hour in this matter, which is too high for her years of experience and the lack of

legal complexity in this default motion.  The Court may look to fees awarded in recent labor

cases in this district to determine a reasonable rate.  See Apolinar, 2013 WL 5408122, at *15.

"Courts in the Eastern District of New York have determined reasonable hourly rates to be . . .

$200 - $300 per hour for senior associates . . . ."  Cuevas, 2013 WL 3057715, at *2 (E.D.N.Y.

June 17, 2013) (citing cases).  For example, in Kalloo v. Unlimited Mechn. Co. of N.Y., Inc., --

F. Supp. 2d --, 2013 WL 6662557, at *2 (E.D.N.Y. Dec. 18, 2013), the court approved $325 per

hour for an associate admitted since 2008 who litigated a contested FLSA case, which is a much

more complicated endeavor than handling a straightforward default case.  I find that Ms. Coyle's

rate should be reduced to $275.00 per hour.  See Man Wei Shiu v. New Peking Taste, Inc., No.

11 Civ. 1175 (NGG), 2013 WL 2351370, at *13 (E.D.N.Y. May 28, 2013) (awarding $275.00

hourly fee to attorney with ten years' experience in FLSA cases and $225.00 per hour to a mid-

level associate); Sacardi v. Green Field Churrascaria, Inc., No. 10 Civ. 5605 (BMC), 2012 WL

4979195, at *1 (E.D.N.Y. Oct. 17, 2012) (awarding $275 per hour to an associate with nine years

of experience in an FLSA and NYLL matter); La Barbera v. Les Sub-Surface Plumbing, Inc.,

No. 03 Civ. 6076 (BMC), 2006 WL 3628024 (E.D.N.Y. Dec. 11, 2006) (awarding $250 per hour

in fees for an associate with six years of experience on an unopposed fees motion in an FLSA

_____

[24] The New York Office of Court Adminstration shows that she was admitted in 2007.  See
http://iapps.courts.state.ny.us/attorney/AttorneySearch#search_result (last accessed Feb. 3,
2014).

and NYLL case); see also Huerta v. Bakery, No. 10 Civ. 4754 (RJD) (JO), 2012 WL 1100647, at

*15 (E.D.N.Y Feb. 17, 2012) ("The fact that Coyle has been admitted in [New York] since 2007

does not by itself warrant a rate above $125. I therefore recommend awarding fees at an hourly

rate of $125 for . . . Coyle . . . .").

  Laura Birnbaum, a "graduate of University of Pennsylvania and (B.A.) and Boston

University School of Law, and . . . former junior associate at [the firm]," is being billed at $200

per hour for her work on this matter. Docket No. 19 ¶ 6. This Court notes that Ms. Birnbaum is

not described in the affidavit as practicing as an attorney, nor is the date of her admission to the

New York State bar listed. In other recent cases before this Court involving this law firm, Ms.

Birnbaum was not yet admitted at the time she completed work for which attorneys' fees were

sought and requested $200 per hour in those matters as well. See Trustees of the Plumbers Local

Union No. 1 Welfare Fund, Add'l Sec. Benefit Fund, Vacation & Holiday Fund, Trade

Education Fund and 401(k) Savings Plan v. Arista Plumbing Heating and Piping Corp., No. 12

Civ. 5130 (SLT) (VMS) (E.D.N.Y. 2012), Docket No. 10 ¶ 15. In light of the fact that Plaintiffs'

counsel does not affirmatively represent to this Court that Ms. Birnbaum was an admitted

attorney at the time she worked on this case,[25] this Court finds that Ms. Birnbaum's work should

be reduced to $100 per hour, an appropriate rate for preadmission attorneys performing paralegal

work. See Trustees of Empire State Carpenters Annuity, Apprenticeship, Labor Mgmt., Coop.,

Pension & Welfare Funds v. The Flooring Experts ("The Flooring Experts"), No. 12 Civ. 6217

(ADS) (AKT), 2013 4761151, at *10 (E.D.N.Y. Sept. 3, 2013) (finding that Ms. Birnbaum's

requested $200 per hour rate was "unreasonable in light of her experience" as a preadmission

---

[25] The New York Office of Court Administration confirms that Ms. Birnbaum was admitted at some point in 2013, but the date of admission is not shown. See http://iapps.courts.state.ny.us/ attorney/AttorneySearch#search_result (last accessed Feb. 3, 2014).

attorney, and reducing it to $100 per hour).

Finally, Plaintiffs' counsel is billing all of their paralegals at $125.00 except for one, Mr. Fargnoli, who is billed at $90.00 per hour.  Docket No. 19-1.  All of these rates are too high, given the lack of complexity in this case.  Plaintiffs' counsel tells the Court that the most senior of these paralegals has been working for the firm since 2010.  Id. ¶¶ 8-12.  Courts in this district have found that an hourly rate of $100 "is a rate reserved in this district for the most experienced paralegals."  Chudomel v. Dynamic Recovery Servs., Inc., No. 12 Civ. 5365 (NGG) (RLM), 2013 WL 5970613, at *11 (E.D.N.Y. Nov. 8, 2013) (collecting cases).  I find that these paralegals, who have been working for the firm at most for approximately four years, are not among "the most experienced paralegals," and are not entitled to $100 per hour, much less the $125 per hour requested.  This is a fairly straightforward FLSA case, as evidenced not only by the record but by the fact that Plaintiffs' counsel used seven rotating paralegals, an approach that signals that it was not particularly important to the firm that an assigned paralegal have any special familiarity with the case.  Cases in this district have typically set paralegals' hourly rates in FLSA default cases anywhere from $70.00 per hour to $100.00 per hour.  See Janus v. Regalis Const., Inc., No. 11 Civ. 5788 (ARR) (VVP), 2012 WL 3878113, at *13 (E.D.N.Y. July 23, 2012); see also Juarez v. Precision Apparel, Inc., No. 12 Civ. 2349 (ARR) (VMS), 2013 WL 5210142, at *14 (E.D.N.Y. Sept. 13, 2013) (reducing requested paralegal rate in a default FLSA case to $75.00 per hour); Duncan v. Revma Elec., Inc., No. 11 Civ. 5952 (SLT) (VMS), 2013 WL 4899531, at *4 (E.D.N.Y. Sept. 11, 2013) (reducing requested $150.00 per hour paralegal rate to $70.00); Castellanos v. Deli Casagrande Corp., No. 11 Civ. 245 (JFB) (AKT), 2013 1207058, at *10 (E.D.N.Y. Mar. 7, 2013) (setting paralegals' hourly rate in FLSA default case at $75.00); Janus, 2012 WL 3878113, at *13 (awarding $100 per hour for paralegal billing rate).

While I would be otherwise inclined to reduce the paralegals' rate in this case to the lower end of this range, in light of the fact that the majority of the paralegals spoke Spanish—which aided in their work in this case as Plaintiffs are Spanish speakers—I find that it is appropriate to reduce all paralegals' hourly rate to $85.00 per hour—the midpoint in the $70.00 to $100.00 range. See Docket No. 19-1 at 3-4 (describing paralegal IC's meeting with Plaintiffs "to read to them the Spanish version of the Motion for Default" and paralegal IG's review of "documents produced by Angela Gonzalez and Veronica Gonzalez"). However, there is no need to take the paralegal rate to the high end of the spectrum because the timesheet reveals that very few of the paralegal hours worked required Spanish-language skills. Id.

In calculating what are "reasonable hours" expended on a case, courts must use their own familiarity with the case in determining what is reasonable and what is not. Clarke v. Frank, 960 F.2d 1146, 1153 (2d Cir. 1992). This Court pinpointed various timesheet entries in advance of the damages inquest and obtained Plaintiffs' counsel's consent to reduce or eliminate them. In particular, it seemed to this Court that the three-and-a-half hours Ms. Coyle devoted to Plaintiffs' request for Entry of Default from the Clerk of Court was excessive in light of the relative roteness of that task, and so this Court reduces that to one-and-one-half hour. Jan. 10 Tr. 61:22-15; Docket No. 19-1 (entries for LC at 5/9/2013 and 5/10/2013). Next, this Court eliminates work done by paralegal Venus Velez for a summary judgment motion because there was no summary judgment motion in this case. Jan. 10 Tr. 62:16-24; Docket No. 19-1 (entry for VV at 6/24/2013). Finally, this Court eliminates all paralegal hours billed relating to Plaintiffs' counsel's cancellation of an appearance before the Court, i.e., telephoning Plaintiffs and an interpreter to give them notice of the cancellation and then later to reschedule the hearing. Insofar as this cancellation was done for Plaintiffs' counsel's need or convenience, there is no

reason to bill the adversary.  Jan. 10 Tr. 62:25-63:9; <u>Docket No. 19-1</u> (entries for IC at 1/2/2014).

Subtracting and modifying the timesheet entries as described, and taking into account the adjustments to the attorneys' rates, this Court recalculates the appropriately requested attorneys' fees in this case as follows: (1) $210.00 for Mr. Ambinder's fees (.6 hours multiplied by $350.00 per hour); (2) $7,700.00 for Ms. Coyle's fees (28 hours multiplied by $275.00 per hour); (3) $710.00 for Ms. Birnbaum (7.1 hours multiplied by $100.00 per hour); and (4) $1,207.00 for paralegals' fees (14.2 hours multiplied by $85.00 per hour).   I find that Plaintiffs are entitled to $9,827.00 in attorneys' and paralegals' fees ($210.00 plus $7,700.00 plus $710.00 plus $1,207.00).

Plaintiffs may also recover costs, and request $914.22.  <u>Docket No. 19-1</u>.  These costs, which include the $350.00 filing fee, $291.50 in service of process fees for the Defendants at the moment of complaint and then default judgment motion, $240.00 in translation fees, and $32.72 in miscellaneous PACER and Westlaw fees, to be reasonable.  I find that Plaintiffs are entitled to recover the $914.22 in costs.

In light of the foregoing, I respectfully recommend that the District Judge **grant** Plaintiffs' default judgment motion for attorneys' fees and costs in the amount of $10,741.22 in attorneys' fees and costs ($9,827.00 in attorneys' fees plus $914.22 in costs).

## IV.    Conclusion

In light of the foregoing, I respectfully recommend that the District Judge

(1)    **dismiss** Defendant CCG from the action entirely;

(2)    **deny** Plaintiffs' default judgment motion relating to 12 NYCRR § 146-1.6;

(3)    **deny** Plaintiffs' default judgment motion relating to their FLSA claims;

(4)    **exercise** supplemental jurisdiction over Plaintiffs' NYLL claims;

(5)     **grant** Plaintiff Angela Gonzalez's default judgment motion on liability relating to her claim under NYLL § 191(1)(a);

(6)     **grant** Plaintiff Angela Gonzalez's default judgment motion on liability relating to her claim under NYLL § 652(1);

(7)     **grant** Plaintiff Angela Gonzalez's default judgment motion for damages pursuant to NYLL § 663, the damages provision for NYLL § 652(1), in the amount of $20,324.90 ($8,536.00 in underpayment of minimum wage, plus $3,252.90 in prejudgment interest, plus $8,536.00 in liquidated damages), plus as additional $2.10 in prejudgment interest for every day including today through the entry of judgment, but **deny** any other damages;

(8)     **grant** Plaintiff Veronica Gonzalez's default judgment motion on liability relating to her claim under NYLL § 191(1)(d);

(9)     **deny** Plaintiff Veronica Gonzalez's default judgment motion on liability relating to her claim under NYLL § 652(1);

(10)    **grant** Plaintiff Veronica Gonzalez's default judgment motion for damages pursuant to NYLL § 198(1-a), the damages provision for NYLL § 191, in the amount of $22,961.79 ($15,075.00 in unpaid wages, plus $4,118.04 in prejudgment interest (calculated up to yesterday's date), plus $3,768.75 in liquidated damages), plus an additional $3.72 in prejudgment interest for every day including today through the entry of judgment, but **deny** any other damages;

(11)    **grant** Plaintiffs attorneys' fees and costs in the amount of $10,741.22.

## V.    Objections

Objections to this Report and Recommendation must be filed, with a courtesy copy sent to the Honorable Margo K. Brodie, at 225 Cadman Plaza East, Brooklyn, New York 11201 within fourteen days of today.  Failure to file objections within the specified time waives the right to appeal before the district court as well as the appellate court.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

Dated:  Brooklyn, New York
          February 5, 2014                                    *Vera M. Scanlon*
                                                              VERA M. SCANLON
                                                              United States Magistrate Judge